# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GEORGE FRISON,          )
          )
        Petitioner,        )
          )     **No. 12 C 285**
    v.            )
          )     **Chief Judge Rubén Castillo**
TARRY WILLIAMS, Warden,   )
Stateville Correctional Center,   )
          )
        Respondent.    )

## MEMORANDUM OPINION AND ORDER

Petitioner George Frison is serving an aggregate 42-year sentence for first degree murder and aggravated battery committed in Cook County, Illinois. Presently before the Court is his *pro se* petition pursuant to 28 U.S.C. § 2254 (the "Petition") challenging his conviction. (R. 18, Pet.) For the reasons stated below, the Petition is denied.

### BACKGROUND[1]

Petitioner's conviction stems from his role in an armed robbery that resulted in the death of Kennedy Brooks and the shooting injury of Eddie Baker. (*See* R. 30-18, Ill. App. Ct. Order dated Dec. 4, 2007.) The evidence adduced at Petitioner's 2005 jury trial showed that on June 5, 2001, Baker accompanied Brooks to a drug transaction that Brooks had arranged with Petitioner and Petitioner's friend Anthony Mason. (*Id.* at 2.) Baker and Brooks drove Brooks' van to the appointed meeting place, the intersection of 43rd Street and Michigan Avenue in Chicago, at approximately 11:50 p.m. (*Id.*) A few minutes later, Petitioner and Mason arrived and got into

---

[1] In deciding the Petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). For clarity, the Court notes that the page numbers listed for record cites refer to the page numbers assigned at the time the document was filed with the Clerk of Court, not to the internal page numbers contained in these documents.

the van. (*Id.*) According to Baker's testimony, as soon as the door to the van was closed, Petitioner pulled out a gun and said, "[W]here the shit at?" (*Id.*) Mason then also pulled out a gun and started shooting. (*Id.*) Baker got shot in the right leg, but he was able to get out of the van and run down the alley. (*Id.*) When he got to the end of the alley, he heard three more gunshots. (*Id.*) When the police arrived a few minutes later, they discovered Brooks' body lying in the middle of the street near the intersection of 43rd Street and Michigan Avenue. (*Id.*) An autopsy later revealed that Brooks had died of multiple gunshot wounds, and two bullets were recovered from his body. (*Id.*)

On the morning of June 7, 2001, police arrested Petitioner in the basement of his apartment building after he and Mason were identified by Baker. (*Id.* at 3.) Police also found weapons and ammunition in the area where he was arrested. (*Id.*) The following day, police conducted a search of Petitioner's apartment building and recovered another weapon, a .25-caliber semi-automatic pistol. (*Id.*) Ballistics testing subsequently showed that spent cartridge cases found in Brooks' van and one of the bullets recovered from Brooks' body were fired from that pistol. (*Id.*) The following day, while in police custody, Petitioner gave a videotaped statement inculpating himself in the offense. (*Id.*) In his statement, he said that he and Mason, along with a third individual, Edward Ware, set up the drug deal because they planned to rob Brooks. (*Id.*) Petitioner said he told Brooks that he knew someone who wanted to purchase 100 grams of heroin. (*Id.*) He stated that he never intended to purchase the heroin, but only to rob Brooks of the drugs. (*Id.*) He admitted that both he and Mason were armed with loaded handguns when they went to meet Brooks. (*Id.*) He further stated that when the men arrived at the appointed spot, he and Mason went into the van, while Ware waited in Petitioner's car. (*Id.* at 3-4.) Once inside the van, Petitioner went to pull out his gun, but Baker grabbed his arm and

the two began to struggle. (*Id.* at 4.) Petitioner stated that Mason also pulled out his gun and started shooting, at which point Baker and Brooks ran out of the van. (*Id.*) Petitioner and Mason also left the van at that point and returned to Petitioner's car, where Ware was waiting. (*Id.*) Petitioner stated that as he was driving away, Ware told him to stop the car because he thought he could still get the drugs from Brooks. (*Id.*) Petitioner stopped the car and let Ware out; he saw Ware run over to Brooks and tell him to turn over "the shit." (*Id.*) As he drove off, he heard a gunshot. (*Id.*)

At trial, Petitioner testified on his own behalf. (*Id.*) He admitted that he was regularly involved in drug-dealing, and that he routinely introduced individuals who wanted to buy heroin to Brooks in order to make a "commission" on the sale. (*Id.*) His account of the shooting differed in certain respects from his videotaped statement. (*Id.*) He testified that he did not intend to rob anyone and instead had helped to arrange a legitimate drug deal on Ware's behalf. (*Id.*) He testified that Mason brought a .25-caliber automatic pistol to the meeting but claimed that he was not armed. (*Id.* at 4-5.) He further testified that while he was in the van, Baker pulled out a gun just as Petitioner was about to hand Baker the money for the drugs. (*Id.* at 5.) He testified that Mason grabbed the gun, and Mason and Baker began to struggle. (*Id.*) Petitioner heard a "click" followed by a series of gunshots, at which point everyone ran out of the van. (*Id.*) He testified that he returned to his own car and told Ware they had been robbed. (*Id.*) As they were driving away, Ware told him to stop the car "because he wanted to get his money back." (*Id.*) Petitioner testified that he stopped the car and let Ware out, and Ware ran after Brooks with a gun in his hand. (*Id.*) As Petitioner drove away, he heard a gunshot. (*Id.*)

At the conclusion of the trial, the jury was instructed on felony first degree murder predicated on attempted armed robbery, intentional first degree murder based on an

3

accountability theory,[2] and aggravated battery with a firearm. (*Id.*) Following deliberations, the jury found Petitioner not guilty of felony murder, guilty of intentional first degree murder under an accountability theory, and guilty of aggravated battery with a firearm. (*Id.*) Petitioner was sentenced to 34 years on the murder count and 8 years on the aggravated battery count, to be served consecutively. (*Id.*)

Petitioner filed a direct appeal through appointed counsel, raising four claims: (1) the trial court erred in admitting evidence of his involvement in a street gang; (2) the trial court erred in allowing a photograph of the firearms recovered from his basement to be taken into the jury room; (3) the trial court erred in refusing to give one of his proposed jury instructions; and (4) the evidence of his guilt on the murder count was legally insufficient. (*Id.* at 1.) The Illinois Court of Appeals rejected these arguments and affirmed Petitioner's conviction in all respects. (*Id.* at 5-15.) Petitioner then sought rehearing on two claims: the gang evidence claim and the photograph claim. (R. 30-19, Pet. for Rehearing.) The petition was denied. (R. 30-20, Ill. App. Ct. Order dated Jan. 7, 2008.) Petitioner filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, reasserting his evidentiary claims but omitting his sufficiency of the evidence claim. (R. 30-21, PLA.) His PLA was denied. (R. 30-22, Ill. S. Ct. Order dated Mar. 26, 2008.) Petitioner sought certiorari with the U.S. Supreme Court, but his petition was denied. *Frison v. Illinois*, 555 U.S. 911 (2008).

---

[2] Under Illinois law, a person is legally accountable for the conduct of another when "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense. 720 Ill. Comp. Stat. 5/5-2(c). In addition, "[w]hen 2 or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the common design or agreement and all are equally responsible for the consequences of those further acts." *Id.*

In March 2009, Petitioner filed a *pro se* petition for post-conviction relief raising various claims of ineffective assistance of counsel, including that: his trial counsel "appeared intoxicated" during the trial; trial counsel was ineffective in failing to call his family and friends to testify about his long-term heroin use; trial counsel was ineffective in failing to call his co-defendant as a witness at trial; trial counsel was ineffective because he misstated a fact during one of the suppression hearings; and his appellate counsel was ineffective in failing to raise an argument about trial counsel's performance on direct appeal. (R. 30-23, State Ct. R. at 28-58.) The trial court denied the petition. (*Id.* at 60-69.)

Petitioner appealed through appointed counsel, arguing that his trial counsel was ineffective because he was intoxicated during the trial, and because he failed to call Petitioner's family members as witnesses to testify about his long-time heroin use. (R. 30-25, App. Br. at 23-28.) Petitioner also argued that he was entitled to additional credits toward his sentence for time he spent in pretrial incarceration. (*Id.* at 29-36.) The appellate court affirmed the denial of relief as to the ineffective assistance of counsel claims, but found merit to Petitioner's argument regarding his sentence and awarded him additional credits. (R. 30-28, Ill. App. Ct. Order dated June 27, 2011). Petitioner filed a *pro se* PLA to the Illinois Supreme Court reiterating the ineffective assistance of counsel claims. (R. 30-29, PLA.) His petition was denied. (R. 30-30, Ill. S. Ct. Order dated Nov. 30, 2011.)

In January 2012, Petitioner filed a *pro se* motion seeking leave to file a successive post-conviction petition with the state trial court. (R. 30-31, State Ct. R. at 82-211.) Among other claims, he asserted that: he was actually innocent of the offense; the search of his apartment building was unlawful; his trial counsel was ineffective on numerous grounds; and his appellate counsel was ineffective because he did not raise an argument about trial counsel's performance

on direct appeal. (*Id.* at 82-211.) The trial court denied Petitioner leave to file a successive petition. (*Id.* at 212-17.) Petitioner appealed through appointed counsel, raising one claim: that his trial counsel was ineffective because he made a factual error during the suppression hearing regarding the time police first arrived at Petitioner's apartment building. (R. 30-33, App. Br. at 2.) Petitioner sought leave to file a *pro se* brief raising other claims, including actual innocence and ineffective assistance of appellate counsel. (R. 30-37, Exs. to PLA at 24-47.) The Illinois Court of Appeals denied his request. (*Id.* at 48.) The appellate court subsequently affirmed the trial court's decision to deny Petitioner leave to file a successive post-conviction petition. (R. 30-36, Ill. App. Ct. Order dated July 22, 2013.) Petitioner filed a *pro se* PLA to the Illinois Supreme Court, but his petition was denied. (R. 30-38, Ill. S. Ct. Order dated Nov. 27, 2013.)

In January 2012, while Petitioner's request for leave to file a successive post-conviction petition was still pending in state court, he filed a *pro se* petition under 28 U.S.C. § 2254 with this Court. (R. 1, Pet.) The Court entered a stay of the petition until the state proceedings were concluded. (R. 11, Min. Entry.) In December 2013, Petitioner notified the Court that the state proceedings had concluded and sought to proceed with his Petition. (R. 16, Pet'r's Mot. to Reinstate.) The Court granted his request and ordered Petitioner to file an amended petition. (R. 17, Min. Entry.) Petitioner thereafter filed the present Petition. (R. 18, Pet.) He raises four claims, which he formulates as follows: (1) his "4th, 5th and 6th Amendment rights were violated where police did not have a warrant to arrest nor was there probable cause to force their way into his apartment and seize evidence . . . and as a result of the unlawful arrest the defendant was coerced to make [an] inculpatory statement against his own penal interest in violation of his Fifth and Sixth Amendment rights to a fundamentally fair trial"; (2) he was "deprived [of] his Sixth Amendment right to effective assistance of trial counsel where his lawyer . . . was

6

intoxicated on various occasions and consistently urged Petitioner to commit perjury and admit he . . . was involved in this crime"; (3) he was "denied his right to confront [a] primary witness . . . who police alleged gave them consent to search [his] house" in violation of the Sixth Amendment Confrontation Clause; and (4) he was denied effective assistance of counsel in violation of the Sixth Amendment because counsel on direct appeal "forfeited/procedurally defaulted" various claims of ineffective assistance of trial counsel and neglected to reassert a sufficiency of the evidence claim in the PLA. (*Id.* at 5-6.)

On October 15, 2014, Respondent answered the Petition and submitted the applicable state court records. (R. 29, Answer; R. 30, State Ct. R.) Respondent argues that Petitioner's claims are procedurally defaulted or without merit. (R. 29, Answer at 11-22.) On November 19, 2014, Petitioner filed a reply in support of his Petition. (R. 33, Pet'r's Reply.)

## LEGAL STANDARD

The Petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254. Under AEDPA, habeas relief cannot be granted with respect to any claim adjudicated on the merits by a state court unless the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Under this deferential standard, the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). Clearly established federal law for purposes of AEDPA means the holdings of the Supreme Court, not Supreme

Court dicta or decisions of the Courts of Appeals. *See Lopez v. Smith*, 135 S. Ct. 1, 4 (2014)

("AEDPA permits habeas relief only if a state court's decision is contrary to, or involved an

unreasonable application of, clearly established Federal law as determined by [the Supreme

Court], not by the courts of appeals.") (internal quotation marks omitted); *see also Williams*, 529

U.S. at 365 ("clearly established Federal law . . . refers to the holdings, as opposed to the dicta,

of [the Supreme Court's] decisions as of the time of the relevant state-court decision") (internal

quotation marks omitted). As the Supreme Court has explained, a state court decision is contrary

to clearly established federal law "if the state court applies a rule different from the governing

law set forth in our cases, or if it decides a case differently than we have done on a set of

materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). However, the state

court need not cite to—or even be aware of—controlling Supreme Court cases, "so long as

neither the reasoning nor the result of the state-court decision contradicts them." *Early v.

Packer*, 537 U.S. 3, 8 (2002).

A court can grant habeas relief under the "unreasonable application" clause if the state

court identifies the correct legal principle from Supreme Court precedent but unreasonably

applies that principle to the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The

state court's decision must be more than incorrect or erroneous; it must be "objectively

unreasonable." *Id*. at 520-21. Federal habeas relief was intended to serve only as a "guard

against extreme malfunctions in the state criminal justice systems," and not as "a substitute for

ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)

(citation omitted). Therefore, to obtain relief, a petitioner must show that the state court's ruling

was "so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Before considering the merits of a claim contained in a habeas petition, a court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity: the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Perruquet v. Briley*, 390 F.3d 505, 513-14 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his federal constitutional claim in one complete round of state review. *Boerckel*, 526 U.S. at 845. To do so, a petitioner must "present both the operative facts and the legal principles that control each claim" at each level of state review. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (citation omitted). This includes presenting the claim in a petition for discretionary review with the Illinois Supreme Court. *Boerckel*, 526 U.S. at 845-47.

The companion procedural default doctrine, also rooted in comity concerns, precludes the Court from reaching the merits of a federal constitutional claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear the claim would now be procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to do so has passed, the claim is procedurally defaulted. *Perruquet*, 390 F.3d at 514.

A habeas petitioner can overcome a procedural default and obtain review of his claim on the merits if he establishes both cause for failing to properly present a claim in state court and a resulting prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977). Cause sufficient to

excuse a procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice in this context "means an error which so infected the entire trial that the resulting conviction violates due process." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citation omitted).

## ANALYSIS

### I.  Claim One

Petitioner first alleges that his constitutional rights were violated when police arrested him without a warrant and seized evidence from his apartment building, which in turn led him to make a statement inculpating himself in the offense.[3] (R. 18, Pet. at 5.) Respondent argues that this claim is procedurally defaulted. (R. 29, Answer at 11.)

---

[3] The Court notes that this claim is worded in a very confusing manner. Petitioner references the Fourth, Fifth, and Sixth Amendments, but the substance of his allegations are that police improperly searched his apartment and arrested him without probable cause or a warrant, which implicates the Fourth Amendment. *See* U.S. Const. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]"). Petitioner references the Fifth and Sixth Amendments in connection with the statement he gave to police, but his argument appears to be that his statement should have been suppressed because it resulted from an improper arrest. (*See* R. 18, Pet. at 5.) This would actually implicate the Fourth Amendment exclusionary rule. *See Brown v. Illinois*, 422 U.S. 590 (1975). To add to the confusion, Petitioner asserts in his reply that he intended claim one solely as a Sixth Amendment claim. (R. 33, Pet'r's Reply at 5.) Petitioner's Sixth Amendment claim, which alleges ineffective assistance of counsel, is discussed in claim two below.

The record reflects that Petitioner did not present this claim on direct appeal, nor did he present it on appeal in the post-conviction proceedings. (*See* 30-15, App. Br; R. 30-21, PLA; R. 30-25, App. Br.; R. 30-29, PLA.) He raised a hodge-podge of arguments in his motion for leave to file a successive post-conviction petition, including a claim that the search of his apartment building was illegal. (R. 30-31, State Ct. R. at 82-211.) Assuming this could be read as the same claim Petitioner is advancing here, Petitioner was denied leave to pursue a successive petition because the state court concluded that he did not meet the requirements under state law for pursuing another petition. (*See* R. 30-31, State Ct. R. at 212-17.) This ruling constitutes a state procedural ground that blocks federal habeas review. *See Woods v. Schwartz*, 589 F.3d 368, 376-77 (7th Cir. 2009) (Illinois court's refusal to permit petitioner to pursue a claim in a successive post-conviction petition constituted state procedural ground barring federal habeas review); *McKinley v. Harrington*, No. 11 C 4190, 2014 WL 1292798, at *7 (N.D. Ill. Mar. 15, 2013) (same). Even if Petitioner could overcome this barrier, he dropped his Fourth Amendment claim on appeal in the successive proceedings, instead raising only a claim of ineffective assistance of trial counsel. (*See* R. 30-33, App. Br.) In short, because Petitioner did not advance a free-standing claim regarding police misconduct in one complete round of state review, it is defaulted and cannot be reviewed on the merits.[4]

In his reply, Petitioner argues that he meets the actual innocence exception, such that his default should be excused. (R. 33, Pet'r's Reply at 2-5.) A petitioner who asserts actual

_____

[4] Although Petitioner did not present a free-standing Fourth Amendment claim on appeal in the successive post-conviction proceedings, it appears that such a claim would have been waived under state law because it was available on direct appeal. *See, e.g., People v. Franzen*, 622 N.E.2d 877, 889 (Ill. App. Ct. 1993) (observing that a Fourth Amendment claim involving police misconduct that was litigated at the trial level but not on direct appeal is generally considered waived in a post-conviction proceeding); *People v. White*, 556 N.E.2d 535, 537 (Ill. App. Ct. 1989) (holding that a Fourth Amendment claim challenging an illegal arrest that was raised for the first time in a post-conviction petition was waived under Illinois law).

innocence "must *demonstrate* innocence; the burden is his, not the state's, for the state has the benefit of the jury's verdict." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence, a habeas petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. He must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. Because of the difficulty of meeting this standard, claims of actual innocence are "rarely successful." *Id.* at 324.

Petitioner has not demonstrated his actual innocence in this case.[5] The record contains significant evidence of Petitioner's guilt, including the inculpatory statement he gave to police, the testimony of Baker, the ballistics evidence, and Petitioner's own testimony at trial. (*See* R. 30-18, Ill. App. Ct. Order.) Petitioner has not offered the type of compelling evidence—such as DNA evidence or witness testimony establishing a clear alibi defense—that would refute this evidence. *See Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (observing that a petitioner claiming actual innocence "must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed [the petitioner] out of the city, with credit card slips, photographs, and phone logs to back up the claim"). Instead, Petitioner offers affidavits from his wife, sister, and co-defendant Mason, stating in conclusory terms that Petitioner's trial counsel, assistant public defender Woodward Jordan, appeared "intoxicated" at different points

---

[5] To the extent Petitioner is attempting to argue actual innocence as a free-standing claim entitling him to federal habeas relief, his argument is unavailing. "'[A]ctual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

during his representation, and that counsel "forced" Petitioner to take the stand and commit perjury. (R. 33, Pet'r's Reply at 69-71.)

Notably, these affidavits were prepared several years after Petitioner's trial ended, even though the facts within them were obviously known to these individuals since the time of trial. (*See id.*) This type of eleventh-hour evidence from family and friends has little probative value in establishing actual innocence. *See House*, 547 U.S. at 552 (observing that evidence from eyewitnesses with "no evident motive to lie" is more convincing than "testimony from inmates, suspects, or friends or relations of the accused"); *McDowell v. Lemke*, 737 F.3d 476, 484 (7th Cir. 2013) ("'[E]leventh hour' affidavits, containing facts not alleged at trial and accompanied by no reasonable explanation for the delay are inherently suspect." (citation omitted)). But in any event, this evidence does not prove Petitioner's *factual* innocence. At most it might show a violation of his Sixth Amendment right to counsel (a claim discussed in more detail below), but it does not prove that he is factually innocent of participating in the robbery scheme and shootings. Based on the record, Petitioner has not established his actual innocence.

Although unclear, Petitioner may also be arguing that he can establish cause and prejudice for his default because Jordan failed to adequately challenge his arrest and the admission of evidence flowing therefrom, when he misstated a fact at one of the suppression

hearings.[6] (*See* R. 33, Pet'r's Reply at 4-5.) "Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default." *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If the ineffective assistance claim was itself not properly presented in one complete round of state review, a habeas petitioner is considered "fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 766-67 (7th Cir. 2002).

The record shows that Petitioner did not raise a claim regarding Jordan's alleged error at the suppression hearing in one complete round of review. Although he raised this argument in his initial post-conviction petition, he did not raise it on appeal in the post-conviction proceedings. (*See* R. 30-25, App. Br.) He later sought to raise it in the successive post-conviction proceedings, but he was not granted leave to pursue a successive petition because the state courts concluded that he did not meet the requirements for doing so under state law. (R. 30-36, Ill. App. Ct. Order.) This ruling constitutes a state procedural bar that blocks federal habeas

---

[6] Petitioner's claim, which he raised in his post-conviction petition, was based on the fact that Jordan mistakenly presumed that only six hours had passed between the shooting and Petitioner's arrest, when in fact it was closer to 30 hours. (*See* R. 30-23, State Ct. R. at 68). The shooting occurred in the early morning hours of June 6, 2001, and Petitioner was arrested on June 7, 2001, around 6 a.m. (*Id.*) In questioning a witness, counsel apparently did not realize that a full day had elapsed between the two events, which actually strengthened his argument that exigent circumstances were lacking. (*Id.*) In the post-conviction proceedings, the trial court concluded that counsel's misstatement at the suppression hearing could not have changed the outcome of the trial. (*Id.*) The court noted that Jordan did not repeat this error at trial, and it was "clear to the jury" that more than a day had passed between the shooting and Petitioner's arrest. (*Id.*) The court further concluded that even if Petitioner's arrest had been quashed, there was substantial evidence of his guilt, including the testimony of Baker, who knew him prior to these events. (*Id.*) The court also concluded that Petitioner's videotaped statement was sufficiently attenuated from his arrest, such that it would have been played for the jury even if his arrest had been quashed. (*Id.*)

review. *See Woods*, 589 F.3d at 376-77. Accordingly, this claim cannot supply cause for Petitioner's default of claim one.

Even if claim one could be reviewed on the merits, Respondent argues that a claim that police violated Petitioner's Fourth Amendment rights, or that evidence seized in violation of the Fourth Amendment was admitted at Petitioner's trial, would be barred by *Stone v. Powell*, 428 U.S. 465 (1976). (R. 29, Answer at 13.) The exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather, "it is a judicially created means of effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573 F.3d 497, 499 (7th Cir. 2009) (quoting *Stone*, 428 U.S. at 482). The rule was intended to deter violations of the Fourth Amendment by "removing the incentive to disregard it," but it has attendant costs, because it "deflects the truthfinding process and often frees the guilty." *Stone*, 428 U.S. at 490-92. Thus, the rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486-87 (citation omitted). In federal habeas proceedings, the "contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 495. Therefore, under *Stone*, "[a]s long as a habeas petitioner enjoyed an 'opportunity for full and fair litigation of a Fourth Amendment claim' in state court, federal habeas review of the claim is barred." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) (quoting *Stone*, 428 U.S. at 481-82).

The record reflects that Petitioner had such an opportunity here. Prior to trial, Petitioner challenged his arrest, the seizure of evidence, and the admission of his statement to police; the state court held two separate evidentiary hearings on these matters and issued rulings analyzing

Petitioner's arguments, ultimately rejecting them and concluding that his rights were not violated. (*See* R. 30-3 & R. 30-4, Suppression Hearing Trs.) Petitioner obviously disagrees with the result reached by the state court, but this is insufficient to overcome *Stone*. The opportunity for full and fair litigation of a Fourth Amendment claim "guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). "*Stone* would not block habeas review if the judge had his mind closed to the necessity of a hearing, or was bribed, or decided . . . that probable cause is not required in Illinois, or was sleepwalking . . . or in some other obvious way subverted the hearing." *Id.* at 531. Petitioner does not argue, nor does the record reflect, that anything of the sort occurred here. For all these reasons, claim one is denied.

## II.     Claim Two

In claim two, Petitioner asserts that his Sixth Amendment right to counsel was violated because Jordan was "intoxicated on various occasions" during his representation of Petitioner. (R. 18, Pet. at 5.) He further claims that Jordan forced him to take the stand and "commit perjury" by admitting his involvement in the offense. (*Id.*) The Court addresses each contention separately.

### A.     Counsel's Alleged Intoxication

Respondent agrees that Petitioner presented this claim in one complete round of state review. (R. 29, Answer at 14.) However, Respondent argues that the claim fails on the merits because the state court's rejection of this claim was not an unreasonable application of Supreme Court precedent. (*Id.* at 14-16.)

Under the Sixth Amendment, a criminal defendant is entitled to "'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of

reasonableness' in light of 'prevailing professional norms.'" *Bobby v. Van Hook*, 558 U.S. 4, 16

(2009) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail

on such a claim, the petitioner must show: (1) counsel's performance was deficient; and (2) the

deficient performance prejudiced him. *Strickland*, 466 U.S. at 684-85. On the deficiency prong,

the central question is "whether an attorney's representation amounted to incompetence under

'prevailing professional norms,' not whether it deviated from best practices or most common

custom." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). In other words,

counsel "need not be perfect, indeed not even very good, to be constitutionally adequate."

*McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted); *see also*

*Harrington*, 562 U.S. at 110 ("there is no expectation that competent counsel will be a flawless

strategist or tactician").

    In evaluating counsel's performance, the Court must avoid the benefit of hindsight and

must respect its "limited role in determining whether there was manifest deficiency in light of

information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). The Court

must also "evaluate [counsel's] performance as a whole rather than focus on a single failing or

oversight[.]" *Ebert v. Gaetz*, 610 F.3d 404, 411-12 (7th Cir. 2010). "[I]t is essential to evaluate

the entire course of the defense, because the question is not whether the lawyer's work was error-

free, or the best possible approach, or even an average one, but whether the defendant had the

'counsel' of which the sixth amendment speaks." *Sussman v. Jenkins*, 636 F.3d 329, 351 (7th

Cir. 2011) (citation omitted). Review of counsel's performance is deferential, and there is an

added layer of deference when the claim is raised in a habeas proceeding: "[T]he question is not

whether counsel's actions were reasonable." *Harrington*, 562 U.S. at 105. "The question is

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

On the prejudice prong, a petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Where the underlying argument the petitioner wanted counsel to raise itself lacked merit, an ineffective assistance of counsel claim cannot succeed: "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

In extreme cases, an attorney's performance can be so deficient as to constitute a *per se* violation of the Sixth Amendment, such as where counsel fails to appear for trial or otherwise ceases to act "in the role of an advocate." *United States v. Cronic*, 466 U.S. 648, 656 (1984). In such cases, prejudice is presumed. *Id.* at 658-59. "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659; *see also Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994) ("if the lawyer fails to show up for trial, that fact alone establishes a constitutional flaw"). In other words, a Sixth Amendment violation "may be found without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial," where circumstances exist "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Wright v. Van Patten*, 552 U.S. 120, 124 (2008) (internal quotation marks and

citations omitted). However, for this narrow exception to apply, "the attorney's failure must be complete." *Bell*, 535 U.S. at 697.

Petitioner argues that his trial counsel was "intoxicated on various occasions" during the course of his representation. (R. 18, Pet. at 5.) In rejecting this claim in the post-conviction proceedings, the Illinois Court of Appeals identified *Strickland* as the governing standard. (R. 30-28, Ill. App. Ct. Order at 4.) The court recognized, consistent with *Cronic*, that certain circumstances could establish a *per se* violation of the right to counsel. (*Id.*) The court nevertheless concluded that Petitioner did not establish a *per se* Sixth Amendment violation under the circumstances alleged, and that he failed to establish ineffective assistance under *Strickland*. (*Id.* at 5.) The court reasoned as follows:

> The defendant first claims that his trial attorney was ineffective because he "reeked of alcohol and appeared intoxicated" during trial. Even if these assertions are accepted as true, they are insufficient to support the defendant's claim because the fact that defense counsel was under the influence of drugs or alcohol does not establish per se ineffective assistance. The pro se petition does not allege any objective facts indicating how defense counsel's performance was deficient. The defendant's assertion that his attorney's condition "'greatly' affected his performance" constitutes nothing more than a broad conclusion, and, as such, it fails to provide even a limited amount of detail as to the manner in which the representation of the defendant was defective.

> In addition, the postconviction petition entirely fails to allege any facts indicating that the result of the trial would have been different if his attorney's performance had not been deficient. Under *Strickland*, actual prejudice must be shown, and mere speculation as to prejudice is insufficient. The defendant's argument that prejudice may be presumed is unpersuasive where neither the petition nor the record indicates that defense counsel's ability to render competent representation was impaired. Consequently, the petition contains no facts, capable of independent corroboration, showing that defense counsel's conduct fell below an objective standard of reasonableness or that the defendant suffered prejudice as a result of his attorney's allegedly intoxicated condition.

(*Id.* (citations omitted).) The court therefore affirmed the denial of this claim. (*Id.*)

19

While the nature of Petitioner's allegation is certainly troubling, based on the record, the

state court's resolution of this claim was not an unreasonable application of Supreme Court

precedent. As the state trial court pointed out, Petitioner did not raise this serious allegation

about counsel until years after his trial was over, which in the court's view made the accusation

"highly suspect." (R. 30-23, State Ct. R. at 65.) This Court agrees.[7] The record reflects that

Petitioner testified at trial and also addressed the trial court at sentencing, and it seems dubious

that he did not raise such a serious concern about counsel's performance when he had the

opportunity to do so. (*See* R. 30-7, Trial Tr. at 39-157; R. 30-11, Sentencing Tr. at 41-44.) It is

also noteworthy that Jordan had co-counsel who was present during the entire trial, and that

Petitioner's co-defendant, Mason, had two attorneys of his own who tried the case alongside

Jordan. (*See* R. 30-5, Trial Tr. at 33.) If Jordan was in fact intoxicated during the trial, it seems

highly unlikely that one of these attorneys would not have noticed something was amiss and

alerted the court. The transcripts reflect that no one raised any concerns about Jordan, and on

two occasions Mason's attorneys adopted Jordan's cross-examination of a witness, suggesting

that they had confidence in his performance. (*See* R. 30-6, Trial Tr. at 75; R. 30-4, Suppression

Hearing Tr. at 31.)

---

[7] The Court notes that Petitioner's evidence in support of this claim has not remained consistent over time. In affidavits Petitioner's family members submitted to the state court in 2008, they stated that Jordan appeared intoxicated during the trial itself. (*See* R. 30-23, State Ct. R. at 51-53.) In affidavits prepared in 2011, Petitioner's family members stated that Jordan was intoxicated, but it is clear they were referring to incidents occurring outside of court and months before Petitioner's May 2005 trial. (*See* R. 33, Pet'r's Reply at 69 ("On and around the months of January and March of 2005, I was present . . . [w]hen. . . Jordan came to my brother's house intoxicated[.]"); *id.* at 71 ("On or around January through February of 2005, . . . Mr. Jordan was intoxicated and insisted that I talk to my husband about taking the stand[.]".) While it certainly would have been unprofessional for counsel to show up to a meeting with a client's family intoxicated, this is a far cry from appearing in court under the influence of alcohol. Additionally, although the record on this point was never developed, the Court notes that there are medical conditions, such as diabetes, which can mimic the signs of alcohol intoxication under certain circumstances. *See generally Hirsch v. Burke*, 40 F.3d 900 (7th Cir. 1994).

In fact, far from showing that Jordan was intoxicated or otherwise impaired during the trial proceedings, the record reflects that he mounted a vigorous defense on Petitioner's behalf. Prior to trial, Jordan challenged Petitioner's warrantless arrest and moved to suppress evidence seized from his apartment building, as well as the admission of his videotaped statement to police. (*See* R. 30-1, State Ct. R. at 57-62.) Counsel participated in evidentiary hearings over the course of two days, called and cross-examined numerous witnesses, and asked pointed questions demonstrating his familiarity with the facts surrounding Petitioner's arrest and the discovery of guns in Petitioner's apartment building. (*See* R. 30-3 & R. 30-4, Suppression Hearing Trs.) At the conclusion of the first hearing, Jordan made a detailed argument as to why the evidence should be suppressed under the applicable law. (R. 30-3, Suppression Hearing Tr. at 130-39.)

At the second hearing challenging the admission of Petitioner's confession, Jordan presented the testimony of an expert witness, Dr. Michael Stone, a clinical psychologist who opined that Petitioner was going through heroin withdrawal at the time he made the statement; upon questioning by Jordan, Dr. Stone testified that the heroin withdrawal would have impaired Petitioner's perception, judgment, and ability to make decisions. (R. 30-4, Suppression Hearing Tr. at 113-153.) Jordan's questioning of this expert witness showed him to be well-versed in the facts and well-prepared on the issues of Petitioner's psychological functioning at the time of he gave the statement.

At trial, Jordan continued to put the state's evidence to the test. He argued a motion *in limine*, actively participated in jury selection, gave an opening statement, vigorously cross-examined the state's witnesses, raised numerous objections, moved for a directed verdict, put on defense witnesses and evidence, participated in the jury instruction conference, gave a closing

argument, noticed a typographical error in the instructions sent back with the jury, voiced his views regarding a note received from the jury, made a motion for a new trial, argued for leniency at sentencing, and filed a timely notice of appeal on Petitioner's behalf. (*See* R. 30-5 to R. 30-14, Trial Trs.) In short, nothing in the trial transcript bears out Petitioner's allegation that Jordan was intoxicated or otherwise significantly impaired during the trial. Instead, the record reflects that Jordan was paying close attention to the proceedings and taking appropriate steps to protect Petitioner's rights.

Therefore, Petitioner's case cannot be considered one of those rare instances described in *Cronic* where counsel failed to show up for trial or otherwise ceased to act as an advocate, wherein prejudice should be presumed. Because Petitioner did not allege facts meeting the *Cronic* standard, the state appellate court reasonably applied *Strickland* to resolve Petitioner's claim.[8] *See Bell*, 535 U.S. at 697-98 (where attorney's performance did not fall within narrow exception described in *Cronic*, the state court correctly applied *Strickland* to resolve the petitioner's ineffective assistance claim). The state court reasonably determined that Petitioner failed to establish deficient performance or prejudice. (R. 30-28, Ill. App. Ct. Order at 4.) As outlined above, Petitioner asserted in vague terms that counsel's alleged intoxication impaired his performance, without explaining how. (*See id.*) The only specific deficiency he pointed to was counsel's failure to call his family members and friends to testify about his long-time heroin

---

[8] The Court finds it noteworthy that lower federal courts have also applied *Strickland* to resolve claims based on an attorney's use of drugs or alcohol during trial. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (Sixth Amendment claim failed where defendant did not identify specific instances of how counsel's alcoholism impaired his performance during trial); *Kelly v. United States*, 820 F.2d 1173, 1175-76 (11th Cir. 1987) (defendant failed to establish ineffective assistance of counsel even though his attorney admitted to smoking marijuana during his trial, where there was no evidence that counsel's drug use impaired his trial performance); *United States v. Jackson*, 930 F. Supp. 1228, 1234 (N.D. Ill. 1996) ("Alcoholism, or even alcohol or drug use during trial, does not necessarily constitute a *per se* violation of the Sixth Amendment absent some identifiable deficient performance resulting from the intoxication.").

use. (*Id.* at 5.) The state court found no merit to this argument, and such a finding was reasonable under the circumstances.

Counsel's strategic decisions are entitled to considerable deference. *See Yu Tian Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011). "The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 528 (citation omitted). Here, Jordan did not call Petitioner's family members or friends as witnesses to testify about his heroin use, but counsel *did* present relevant testimony from an expert witness on this point. Specifically, he presented the testimony of Dr. Stone to show that Petitioner's heroin use impacted the reliability of his confession. (R. 30-28, Ill. App. Ct. Order at 5.) Counsel also elicited testimony from Petitioner about his heroin use and the withdrawal symptoms he was experiencing at the time he made the confession. (*Id.* at 2.) The jury nevertheless found Petitioner guilty. It is difficult to fathom how Petitioner's family members and friends—who had an obvious reason to provide favorable testimony—would have been more convincing to the jury than a disinterested expert witness. General testimony about Petitioner's past drug use would have had little relevance to his mental state at the time these events occurred, and calling these witnesses would have compounded the damaging testimony the jury heard about Petitioner's drug use and drug-dealing, which did not paint him in a very favorable light. Given the deference afforded to counsel's strategic decisions, the Court cannot conclude that the state court's rejection of this claim constituted an unreasonable application of *Strickland*.

**B.    Forcing Petitioner to Commit Perjury**

Petitioner also claims that Jordan was ineffective because he "forced" Petitioner to take the stand and "commit perjury" by admitting his involvement in the offense. (R. 18, Pet. at 5.)

This claim is somewhat puzzling, because Petitioner gave a detailed statement to police describing his involvement in the offense at the time of his arrest, before counsel was appointed to represent him. (*See* R. 30-18, Ill. App. Ct. Order at 3.) Regardless, Respondent argues that this claim is procedurally defaulted and cannot be reviewed on the merits. (R. 29, Answer at 16.)

The record shows that Petitioner raised this claim in his motion for leave to file a successive post-conviction petition, but the state court denied his request, finding that he did not meet the requirements under state law for pursuing a second petition. (*See* R. 30-33, State Ct. R. at 42-49.) As explained above, the denial of leave to pursue this claim in a successive post-conviction petition constitutes a state procedural ground that blocks federal habeas review. *See Woods*, 589 F.3d at 376-77; *McKinley*, 2014 WL 1292798, at *7. Even if Petitioner could overcome this hurdle, he did not present this specific claim to the Illinois Court of Appeals, and instead argued only that he should be permitted to pursue a claim that trial counsel was ineffective because he misstated a fact during one of the suppression hearings. (*See* R. 30-33, App. Br. at 5.) Because Petitioner did not present this specific allegation of ineffective assistance of counsel in one complete round of state review, it is defaulted. *See Boerckel*, 526 U.S. at 845; *see also Stevens*, 489 F.3d at 894 ("failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default" even if the petitioner raised other grounds of ineffective assistance of counsel).

Apparently recognizing this problem, Petitioner argues in his Petition that his appellate counsel, Michael True, was ineffective because he did not raise this claim on direct appeal. (R. 18, Pet. at 6.) Ineffective assistance of counsel can supply cause for a default, but it must have been separately exhausted in state court as an independent claim. *Edwards*, 529 U.S. at 451-52; *Wrinkles*, 537 F.3d at 812. Petitioner did not exhaust an independent claim that True was

24

deficient in failing to argue that Jordan forced him to lie on the stand. Petitioner did not present

this specific claim on appeal in the post-conviction proceedings, nor was it contained in the brief

his attorney filed on appeal in the successive post-conviction proceedings. (*See* R. 30-25, App.

Br.; R. 30-33, App. Br.) In the *pro se* supplemental brief Petitioner sought to file on appeal in

the successive post-conviction proceedings, he raised an "actual innocence" argument in which

he mentioned that Jordan had forced him to take the stand and lie about his involvement in the

offense. (*See* R. 30-37, Exs. to PLA at 31.) He also claimed that True was ineffective because

he did not raise a claim that Jordan failed to adequately protect his Fourth Amendment rights.

(*Id.* at 34-38.) Neither of these allegations fairly presented a claim that True was ineffective

because he did not raise an argument on direct appeal that Jordan forced Petitioner to lie on the

stand.[9] *See Stevens*, 489 F.3d at 894. Nor did Petitioner include this specific claim in his PLA to

the Illinois Supreme Court. (*See* R. 30-37, PLA.) Because Petitioner did not present this claim

in one complete round of state review, it too is defaulted.

Even if the claim were not defaulted, Petitioner has failed to demonstrate that True was

ineffective. Under the Sixth Amendment, appellate counsel "need not (and should not) raise

every nonfrivolous claim, but rather may select from among them in order to maximize the

likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To establish

---

[9] Petitioner's proposed supplemental brief was rejected by the state appellate court, as there is a
long-standing rule in Illinois that a criminal defendant has no right to simultaneously represent
himself and be represented by counsel. *People v. Williams*, 454 N.E.2d 220, 227 (Ill. 1983) ("a
defendant has no right to both self-representation and the assistance of counsel"); *People v.
Woods*, 684 N.E.2d 1053, 1058 (Ill. App. Ct. 1997) ("If a defendant is represented by appellate
counsel . . . he has no right to a 'hybrid appeal' in which he alternates between being represented
by counsel and proceeding *pro se* by filing a supplemental *pro se* brief."). After Petitioner's
request to file the brief was denied, counsel advised him that he had the option of proceeding *pro
se* if he preferred to have his own brief considered rather than the one filed by counsel. (*See* R.
30-37, Exs. to PLA *Id.* at 49.) Counsel further advised that if Petitioner wished to proceed *pro
se*, he should send counsel a motion requesting that counsel withdraw from the case. (*Id.*) There
is nothing in the record to reflect that Petitioner ever took this step.

ineffective assistance of appellate counsel, Petitioner must demonstrate that counsel missed a "significant and obvious issue without a legitimate strategic reason for doing so." *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000) (internal quotation marks and citation omitted). He also must demonstrate that if counsel had raised the issue, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Id.*

The record shows that True filed a 44-page appellate brief on Petitioner's behalf raising four substantive arguments, including a sufficiency of the evidence claim which, if successful, would have entitled Petitioner to an acquittal. *See People v. Brown*, 1 N.E.3d 888, 900 (Ill. 2013) ("When a reviewing court reverses a conviction based on evidentiary insufficiency, the constitutional prohibition against double jeopardy. . . precludes the State from retrying the defendant."). Although these arguments were ultimately unsuccessful, the state appellate court found enough merit to them to warrant a 15-page opinion. (*See* R. 30-18, Ill. App. Ct. Order.)

Additionally, counsel likely had a legitimate strategic reason for omitting a claim about trial counsel's performance. On direct appeal, a defendant can only raise arguments that are supported by the trial record. *See Bank of Am., N.A., v. Alex GU,* No. 3-14-0248, 2015 WL 512894, at *3 (Ill. App. Ct. Feb. 5, 2015) ("It is . . . well established that, on appeal, a reviewing court is limited to the record of the trial court and cannot consider supplemental evidence that is not included as part of the trial record."). Because of this rule, it is usually "preferable" to raise an ineffective assistance claim on collateral review rather than on direct appeal, as the trial record is often incomplete or inadequate for litigating such a claim. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *see also Bond v. United States*, 1 F.3d 631, 635 (7th Cir. 1993) ("Raising [an ineffective assistance of counsel claim] on direct appeal presents its own perils

because the argument must rest solely on the trial court record, which often offers little insight into counsel's decision-making process.").

A claim that Jordan pressured Petitioner to take the stand and lie would no doubt require outside evidence; in fact, Petitioner submits such evidence—affidavits from his family members and friends—in support of the claim here. (*See* R. 33, Pet'r's Reply at 69-71.) This evidence could not have been considered on direct appeal because it was outside the trial record. *See Bank of Am.*, 2015 WL 512894, at *3. Had Petitioner raised an ineffective assistance claim on direct appeal, he would have been foreclosed from litigating this claim in the post-conviction proceedings based on a more complete record. *See People v. Beaman*, 890 N.E.2d 500, 509 (Ill. 2008) (under Illinois law *res judicata* bars a petitioner from raising issues in a post-conviction petition that were litigated on direct appeal). Under these circumstances, Petitioner has failed to establish that True was ineffective. Therefore, he has not established cause for his default. To the extent Petitioner is asserting actual innocence to excuse his default, that argument fails for the reasons outlined above. For these reasons, claim two is denied.

## III. Claim Three

In his third claim, Petitioner argues that his rights under the Sixth Amendment Confrontation Clause were violated when police testified at one of the suppression hearings that a man named Joseph Collins gave them consent to search the basement of Petitioner's apartment building. (R. 18, Pet. at 6.) Respondent argues that this claim is procedurally defaulted. (R. 29, Answer at 18.) The Court agrees. Although Petitioner raised this claim in his initial post-conviction petition, he did not raise it at either level of appeal. (*See* 30-25, App. Br.; R. 30-29, PLA.) To the extent Petitioner argues that actual innocence excuses his default, that argument is unavailing for the reasons already explained.

Although unclear, Petitioner may also be arguing within this claim that his Fourth Amendment rights were violated by the trial court's denial of his motions to quash his arrest and suppress evidence. (*See* R. 18, Pet. at 6 ("Trial court was in error manifestly abused his discretion and ruling was arbitrary, fanciful, and unreasonable in denying the motion to quash arrest and suppress the illegally seized evidence[.]").) If so, such a claim would be barred by *Stone* for the reasons explained in connection with claim one. Accordingly, claim three is denied.

## IV.    Claim Four

In his final claim, Petitioner alleges that he was denied the effective assistance of counsel on direct appeal. (R. 18, Pet. at 6.) He argues that True, who represented him before the Illinois Court of Appeals, was ineffective because he did not raise any claims regarding Jordan's performance. (*Id.*) The argument about True's performance was already addressed in connection with claim two. As explained above, Petitioner did not present a claim regarding True's performance in one complete round of state review, and therefore, it is procedurally defaulted. *See Boerckel*, 526 U.S. at 845. Even if the claim could be reviewed on the merits, Petitioner has not established that True was ineffective in his representation of Petitioner.

Petitioner also asserts that Laura Weiler, who represented him before the Illinois Supreme Court, was ineffective because she did not reassert his sufficiency of the evidence claim in the PLA she filed on his behalf. (R. 18, Pet. at 6.) Respondent correctly points out that Petitioner did not raise this claim anywhere in the state proceedings. (*See* R. 29, Answer at 19.) Because Petitioner did not fairly present this claim in one complete round of state review and the opportunity to do so has passed, the claim is procedurally defaulted. *See Boerckel*, 526 U.S. at 845.

In any event, the claim is legally frivolous. There is no federal constitutional right to counsel to pursue discretionary appeals before a state supreme court. *See Wainright v. Torna*, 455 U.S. 586, 587-88 (1982); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). Without a constitutional right to counsel, one cannot be deprived of effective assistance of counsel under the Sixth Amendment. *Wainright*, 455 U.S. at 587. For these reasons, claim four is denied.

## V.     Certificate of Appealability

As a final matter, the Court must consider whether to issue Petitioner a certificate of appealability. *See* Rule 11 of the Rules Governing Section 2254 Cases. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). When a claim is resolved on procedural grounds, the Court can grant a certificate of appealability "only when the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable." *Peterson v. Douma*, 751 F.3d 524, 530-31 (7th Cir. 2014).

As fully explained above, Petitioner's claims are procedurally defaulted or without merit under AEDPA standards. Nothing before the Court suggests that jurists of reason would debate the outcome of the Petition or find a reason to encourage Petitioner to proceed further. Accordingly, the Court declines to grant Petitioner a certificate of appealability.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the Petition (R. 18), and DENIES the petitioner a certificate of appealability.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 24, 2015**